JOHN J. CAHILL v. BELTRAMI COUNTY.[1]

October 31, 1947.

No. 34,480.

---

[1]Reported in 29 N. W. (2d) 444.

*Herbert E. Olson,* County Attorney, for appellant.
*Smith & Nolan,* for respondent.

PETERSON, JUSTICE.

The county of Beltrami appeals from an order of the district court on appeal from an order of the county board fixing the salary of its sheriff.

The questions for decision are: (1) Whether a statute (M. S. A. § 387.21) authorizing the court on appeal from the decision of an administrative agency to fix the salary of a sheriff is unconstitutional upon the ground that fixing of a public officer's salary involves the exercise of legislative power, which is vested exclusively in the legislature and denied to the courts by Minn. Const. art. 3, § 1; (2) whether, if the first question is answered in the affirmative, the court erred by fixing the sheriff's salary in an excessive amount; and (3) whether the court had the power to fix the sheriff's salary in an amount greater than that suggested by him to the county board in his request for an adjustment thereof.

The sheriff's salary was originally fixed in 1917 at $2,000 per annum. §§ 387.19, 387.20 (L. 1917, c. 312). In 1943, the county board was authorized by § 382.187 (L. 1943, c. 597) to increase the salary of the sheriff ten percent. Acting under the authorization, the county board increased the sheriff's salary to $2,200. The 1943 statute by its terms was to remain in effect until one year after declaration by proper authority of the cessation of hostilities of World War II. On December 31, 1946, the President made such a declaration.

Thereupon, and at the meeting of the county board held on January 7, 1947, the sheriff, pursuant to § 387.21, presented to the county board a written request for consideration and adjustment of his salary, in which he pointed out that the salary had been fixed by the 1917 statute as amended by the one of 1943, and that during the five years prior to making the request living costs had increased 56 percent. While he did not specify the amount of the salary which he wanted the board to fix, he suggested that a 20

percent increase in his salary would be a very reasonable adjustment thereof. The county board granted a 15 percent increase, thereby fixing his salary at $2,530 per year. The sheriff appealed to the district court from the order of the county board fixing his salary. In the notice of appeal he stated that the purpose of the appeal was to have the court "summarily determine the amount of salary to be paid the appellant as sheriff of Beltrami County, Minnesota, during his present term of office or until such time as such salary may thereafter be increased by the County Board or otherwise increased as may be provided by law."

The appeal was taken under § 387.21, which so far as here material provides:

"Such sheriff * * * may appeal from the fixing of the salary in the same way in which appeals may be taken from the allowance or disallowance by the county board, of claims presented to it for allowances as against the county. * * * and the court, upon hearing such appeal, shall summarily determine the amount of salary to be paid any such sheriff during the remainder of his term of office unless the same be thereafter increased by the county board, as hereinbefore provided, and the order of the court fixing the salary shall be served by copy upon the county auditor forthwith."

The district court found that the salary of $2,530 fixed by the county board was inadequate and fixed it at $3,000 per year. It took into consideration, among other matters, such facts as that the amount of the sheriff's fees had decreased since 1923; that the sheriff received certain fees and emoluments; that he had the use of a residence in the jail; that he received certain income from boarding prisoners in the jail; and that other sheriffs in counties comparable to Beltrami received larger salaries than its sheriff.

We think that the constitutional question is foreclosed by our decision in Rockwell v. County of Fillmore, 47 Minn. 219, 49 N. W. 690, where we held constitutional a statute authorizing the district court on appeal from the decision of the county board to fix the salary of a county attorney. We there held that, as a general

proposition, fixing the compensation of a public officer involves the exercise of legislative power, which the courts are expressly "inhibited" by the constitution (Minn. Const. art. 3, § 1) from exercising; but that the rule has no application where fixing the compensation of an officer or quasi officer of the court is involved, and that in such a case the court may be constitutionally invested by statute with power to fix the amount of compensation, even though the officer otherwise belongs to the executive department of the government. Because the county attorney's duties are performed under the direction and supervision of the court and because under certain circumstances the court may designate or appoint him or his assistant, we held that the county attorney was a quasi officer of the court. And, because of "the character of the services rendered, and the place where rendered," we held that the judges of the district court were peculiarly well qualified to determine what a county attorney's salary should be.

The sheriff is a quasi officer of the court within the rule. Sheriffs undoubtedly belong to the executive department of the government. Through them the commands of the judicial department are executed. See, In re Neagle (Cunningham v. Neagle) 135 U. S. 1, 10 S. Ct. 658, 34 L. ed. 55. Like a county attorney, a sheriff stands in intimate relation to the court and performs many of his most important duties under its control, direction, and supervision. Among other things, it is the duty of a sheriff to execute all writs, processes, and orders of the court and to "attend upon the terms of the district court." § 387.03. The nature of the sheriff's duties, so far as they are subject to the control, direction, and supervision of the court, and the place of their performance, so far as that is done in the presence of the court, are in striking analogy to those of a county attorney. Because of the nature of a sheriff's duties and the court's control over him, we held in Breuer v. Elder, 33 Minn. 147, 22 N. W. 622, that a sheriff is an officer of the court. Our conclusion is that the reasons for sustaining the constitutionality of the statute involved in the Rockwell case apply here and that the statute in question is constitutional.

■ In determining the amount of a sheriff's salary, the court is necessarily vested with wide discretion. We have examined the record and find that there was no abuse thereof. We refrain from discussing the evidence to point out wherein it sustains the trial court's decision, because to do so would serve no useful purpose so far as establishing a precedent and would only prolong the opinion.

■ The basis for the county's contention that the court lacked power to fix the sheriff's salary in an amount greater than the one suggested by him to the county board in his request for an adjustment of his salary is that the subject matter, involved in the proceedings in the first instance before the county board and later on appeal to the district court, was a claim; that under § 471.38 all claims are required to be itemized and presented to the county board for audit and allowance; and that, because that is true, the district court on appeal is without power to increase the amount of the claim by amendment or otherwise. We do not agree with the contention. In view of the fact that the sheriff's salary was not fixed by express provision of the statute, but was fixed pursuant to statutory authorization by the county board in the first instance and then by the district court on appeal, we do not stop to consider whether the statute relating to the presentation of claims and the allowance thereof by the county board has any application here, because an express provision thereof declares that it shall be inapplicable to a claim or demand for an annual salary fixed by law (see, Naeseth v. Village of Hibbing, 185 Minn. 526, 242 N. W. 6; City of Fergus Falls v. Board of Co. Commrs. 88 Minn. 346, 93 N. W. 126). We hold that the subject matter of the proceedings before the county board in the first instance and before the district court on appeal did not involve a claim at all within the meaning of the claim statute.

The statute requiring claims to be itemized, presented, and allowed contemplates that the demands to which it relates shall be susceptible of being itemized and audited in the ordinary course of handling them and that they shall be ripe for the purpose. Claims susceptible of being itemized and audited before allowance for pay-

ment are such as are based upon some executed transaction such as the performance of a contract or the furnishing of goods or services and give rise to present liability to pay for the same. City of Mankato v. Barber Asphalt Pav. Co. (8 Cir.) 142 F. 329; Fargo Cornice & Ornament Co. v. School District, 152 Minn. 342, 188 N. W. 733; Berg v. Village of Chisholm, 143 Minn. 267, 173 N. W. 423; Manson v. Village of Chisholm, 142 Minn. 94, 170 N. W. 924; 4 Dunnell, Dig. & Supp. § 6741. The fixing of a salary is not susceptible of any such procedures. What is there to itemize, to audit, to allow, or to pay? Fixing the sheriff's salary involves no action with respect to any present claim or liability arising out of past facts, but rather involves promulgation of a rule to be applied in the future in determining the amount of the sheriff's compensation. The effect of fixing the salary by the county board or the district court, so far as it establishes a mere rule for measuring future liability, is not different from such action by the legislature itself. See, Rockwell v. County of Fillmore, 47 Minn. 219, 49 N. W. 690, *supra*.

The language of § 387.21 authorizing the appeal makes it clear that the subject matter involved is not a claim, because it authorizes an appeal "in the same way in which appeals may be taken from the allowance or disallowance by the county board, of claims * * *." If the legislature deemed the subject matter involved a *claim*, it would have said so and would have provided for an appeal from the allowance or disallowance of a *claim*. Instead, it said that an appeal may be taken "in the same way" as one from the allowance or disallowance of a claim, thereby indicating that it understood that the subject matter was not a claim, but something else. The statute merely adopted the procedure for appeals involving claims for the purpose in certain cases of transferring from the county board to the district court the matter of fixing a sheriff's salary.

The court was not bound by the sheriff's suggestion to the county board as to the amount of the increase upon the grounds that the sheriff was precluded by the suggestion, or otherwise, from receiving a larger salary. The county board in the first instance exercised

delegated legislative power; its duty was to fix the amount of the sheriff's salary in a just and reasonable sum. The court's duty on appeal was to "summarily determine the amount of salary to be paid any such sheriff * * *." The appeal vacated and set aside the decision of the county board, with the consequence that the subject matter of the appeal was before the district court for determination *de novo* the same as if the county board had taken no action in the premises. Kief v. Mills, 147 Minn. 138, 179 N. W. 724. These provisions contemplate that the county board and the court shall base their decisions on public considerations relating to the justness and reasonableness of the salary itself, and not on what the sheriff demands or suggests. The matter of fixing a salary is not one of contract or mere negotiation between a public authority and an officer. The salary is an emolument of the office, and the rules governing contractual relations and obligations in ordinary cases are not applicable. 5 Dunnell, Dig. & Supp. § 8005; 46 C. J., Officers, § 233; 57 C. J., Sheriffs and Constables, § 1138.

The sheriff's suggestion to the county board as to what he considered a reasonable adjustment of his salary amounted to no more than an admission. An admission does not of itself operate as an estoppel, but may be explained, limited, qualified, and contradicted. Here, that was done by a showing before the district court that the just and reasonable salary for the sheriff exceeded not only the amount suggested by him to the county board, but also that fixed by the court as the amount of his salary. Of course, it was proper for the county board and the court to consider the suggestion made by the sheriff, but they were in no sense bound by it.

When the salary had been so fixed by the court's order, the county board had nothing more to do with it. Thereupon, it became the county auditor's duty to draw warrants for the sheriff's salary as it came due, as in a case "in which the precise amount is fixed by law," without auditing and allowance thereof by the county board. § 384.13. Service upon the county auditor of the court's order fixing the sheriff's salary is required by § 387.21 in order that the auditor

may know the amount for which to draw his warrant and perform his duty in that respect.

Affirmed.

[1]Reported in 29 N. W. (2d) 436.