## ROBERT BUSSE v. BOARD OF COUNTY COMMISSIONERS, SIBLEY COUNTY.

241 N. W. 2d 794.

April 16, 1976—No. 46017.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, *Thomas H. Jensen,* Special Assistant Attorney General, and *James P. Gerlach,* for appellant.

*Gislason, Dosland, Hunter & Malecki* and *C. Allen Dosland,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

The Sibley County Board of County Commissioners appeals from an order of the district court fixing the salaries of the deputy clerks of district and county courts of the county in a statutory appeal proceeding pursuant to Minn. St. 485.018, subd. 7, and 487.13. We affirm.

Robert Busse, clerk of District and County Courts in Sibley County, appealed to the district court of that county from the setting of his budget for the year 1975 by the county commissioners. Appeal to the district court was made pursuant to Minn. St. 485.018, subd. 7, and 487.13. Minn. St. 485.018, subd. 7, was considered in this court's opinion in In re Clerk of Lyon County Courts, 308 Minn. 172, 241 N. W. 2d 781 (1976). The distinction between the two cases is that while the statutory procedure was scrupulously followed in the instant case, it was not followed in the Lyon County case. In this case the clerk of district and county courts prosecuted a timely appeal from the budget determination, and this court assigned a judge from outside the judicial district to hear the appeal. The clerk does not challenge the amounts budgeted for his own salary or materials, but only the salaries of his three deputy clerks.

Mrs. Beatrice A. Goetsch, chief deputy clerk of district court, received a salary of $6,014 in 1974. For 1975, the clerk proposed that her salary be $9,403.62, the board allowed $7,500, and the court ordered $9,200. Mrs. Cheryl Dummer, chief deputy in the county court, received a salary in 1974 of $5,100. For 1975, the clerk proposed that her salary be $8,413.78, the board allowed $6,780, and the court ordered $8,400. Miss Lois Zachow, the second deputy clerk of district and county courts, received a salary in 1974 of a "little over" $5,000. For 1975, the clerk proposed that her salary be $8,803.63, the board allowed $6,600, and the court ordered $8,200.

The evidence adduced at the hearing consisted chiefly of the

testimony of the clerk and two of the Sibley County commissioners, together with documentary evidence concerning the cost of living, salaries of other county employees, salaries of deputy clerks of court in other counties, and duties of deputy clerks of court.

The county commissioners granted an across-the-board cost-of-living increase of 3 percent plus $700 to all "competent and faithful" county employees with salaries under $15,000. Such employees with salaries over $15,000 recieved 2 percent plus $700.

The three deputy clerks of court, having salaries under $15,000, received the increase of 3 percent plus $700. In addition, each of them received a $50-a-month merit increase because of their competence. Only one other county employee received a merit increase, which was in the amount of $30.

The county commissioners were not intimately familiar with the specific duties of the deputy clerks. One commissioner testified that the clerk's salary proposal was rejected because it was a drastic departure from what the board had been considering in its own deliberations and, when the clerk had testified before the board, "it would [have been] very difficult for the Board at that point to shuck our proposal in favor of a new one that had been presented in the middle of the day." Both commissioners who testified emphasized the need for interdepartmental salary equality as a ground for rejecting the clerk's proposal.

In his proposed budget, the clerk requested a higher salary for his three deputies than the commissioners granted. He testified as to the method he used in calculating the deputies' salaries. He used as a basis $8,838, the salary received by the previous chief deputy clerk who had retired after 40 years' employment. He concluded, based on his knowledge of other counties, that a court clerk should be at the top of the pay scale after 5 years. He then used a factor from the consumer price index figures showing a cost of living increase of 12.2 percent to compute the salaries. His computation for each of the deputies follows:

Mrs. Goetsch: $8,838 x 95% (4 years' experience) = $8,396 x 112% (cost-of-living factor) = $9,403.63.

Mrs. Dummer: $8,838 x 85% (2 years' experience) = $7,512.30 x 112% = $8,413.78.

Miss Zachow: $8,838 x 95% (4 years' equivalent experience) = $8,396.10 x 112% = $9,403.63 —$600 (reduced because of greater responsibility of chief deputy) = $8,803.63.

The clerk enumerated a wide variety of duties, responsibilities, and training requirements for court deputies. He testified that his deputies have a wider range of duties than those in other counties because their limited number does not permit specialization. He also testified that the work of deputy clerks of court is more difficult and more technical than the work of other deputies in other departments. He further gave extensive descriptions of the background, specific duties, and statutory responsibilities of the deputies. The performance of the deputy clerks was rated as excellent by all parties.

It was shown that the deputy clerks of court receive substantially lower salaries in Sibley County than other deputies in the offices of the auditor, treasurer, and register of deeds. There was testimony by the chairman of the county board that other deputies had substantially more experience.

Several affidavits were introduced showing the salaries of deputy clerks of court in other counties. The salaries vary; some counties pay more and some less than Sibley County to deputies of comparable experience.

Two issues are raised on appeal:

(1) Did the district court abuse its discretion in adjusting the deputy court clerks' salaries?

(2) Should the clerk, who prosecuted the appeal below, be allowed attorneys fees?

■ Under the salary and budgetary scheme for district and county court clerks established in Minn. St. 485.018 and 487.13, the county board is empowered to set annually by resolution the salaries and budgets of the clerks. The clerks, in turn, may appeal

to the district court if they are dissatisfied with the board's determination. The appeal is authorized by Minn. St. 485.018, subd. 7, which provides:

"The clerk of district court[1] if dissatisfied with the action of the county board in setting the amount of his salary or the amount of the budget for the office of clerk of district court, may appeal to the district court on the grounds that the determination of the county board in setting such salary or budget was arbitrary, capricious, oppressive or without sufficiently taking into account the extent of the responsibilities and duties of said office. The appeal shall be taken within 15 days after the date of the resolution setting such salary or budget by serving a notice of appeal on the county auditor and filing same with the clerk of the district court. The court either in term or vacation and upon 10 days notice to the chairman of the board shall hear such appeal. On the hearing of the appeal the court shall review the decision or resolution of the board in a hearing de novo and may hear new or additional evidence, or the court may order the officer appealing and the board to submit briefs or other memoranda and may dispose of the appeal on such writings. If the court shall find that the board acted in an arbitrary, capricious, oppressive or unreasonable manner or without sufficiently taking into account the responsibilities and duties of the office of the clerk, it shall make such order to take the place of the order appealed from as is justified by the record and shall remand the matter to the county board for further action consistent with the court's findings. After determination of the appeal the county board shall proceed in conformity therewith."

This court has not yet reviewed an appeal under this specific statute, but it has dealt with an identical statute dealing with the sheriffs' salaries in Cahill v. Beltrami County, 224 Minn. 564, 29 N. W. 2d 444 (1947); and In re Petition of Zillgitt v. Goodhue County Board, 295 Minn. 9, 202 N. W. 2d 378 (1972). In each

---

[1] The same provision applies to county courts. Minn. St. 487.13.

of those cases this court upheld the district court's order increasing the salary, noting that the district court had broad discretion to adjust disputed salaries. The scope of review in the instant case is therefore very narrow.

■ The only question presented is whether the district court abused its discretion in granting the increases. While it is true that the salaries ordered by the district court resulted in substantial increases to the deputies over their previous year's salaries, there is ample evidence to support the court's decision that the board's determination was "arbitrary, capricious, oppressive or without sufficiently taking into account the extent of responsibilities and duties" of the clerk's office. Such evidence includes: (1) Uncontradicted testimony of the clerk that deputy clerks' jobs were more difficult and technical than otherwise comparable jobs in other departments of the county, but paid less; (2) evidence showing salaries paid deputy court clerks in other counties which indicated that the Sibley County deputy clerks were paid less than others; (3) evidence of excellent job performance by the deputies; (4) evidence of very low starting salaries for the deputies. Although there were a few contradictions and conflicts in the evidence, these were for the district court to resolve.

The thrust of appellant's attack on the court's decision is essentially this—the commissioners used a rational scheme in providing across-the-board salary increases for all employees and added a $50-a-month merit increase for the deputy clerks. In doing this, they considered the duties of those clerks and gave them increases of 24 to 32 percent over their 1974 salaries. Such a process, appellant concludes, is clearly not arbitrary or capricious. The problem with this line of argument is that the application of an across-the-board increase and a $50 merit increase may not be rational in view of the previously low salaries and the evidence that clerks were behind comparable fellow employees. Obviously, treating all equally *now* does not remedy the effect of past discrimination. We hold that the district court did not abuse its discretion in modifying the salaries.

■ The more difficult of the two issues in this case is whether attorneys fees were properly awarded. The clerk requested, and the district court granted, attorneys fees on the appeal below. The general rule, often stated in Minnesota, is that attorneys fees will not be granted absent specific statutory or contractual authorization therefor. Benson Co-op. Creamery Assn. v. First District Assn. 276 Minn. 520, 151 N. W. 2d 422, 152 N. W. 2d 182 (1967) ; Midway Nat. Bank v. Gustafson, 282 Minn. 73, 81, 165 N. W. 2d 218, 224 (1968). There are exceptions, e. g., Dworsky v. Vermes Credit Jewelry, Inc. 244 Minn. 62, 69, 69 N. W. 2d 118, 124 (1955) (wrongful act propelling one into litigation with third party) ; Bosch v. Meeker Co-op. Light & Power Assn. 257 Minn. 362, 101 N. W. 2d 423 (1960) (shareholder's derivative suit of benefit to corporation).

The clerk attempts to fit this action into Minn. St. 388.09, which provides:

"When there is no county attorney the county board may employ any competent attorney to perform such legal services for the county as may be necessary. The board may employ an attorney other than the county attorney either to assist him or to appear for the county or any officer thereof in any action in which such county or officer in his official capacity is a party, or to advise the board or its members in relation thereto, or in relation to any other matter affecting the interests of the county, and may pay such attorney out of the funds of the county."

The obvious problem is that the statute gives *the board* authority to employ an attorney—the board is the opposing party here and has not seen fit to employ counsel for the clerk.

While we reaffirm the general rule regarding attorneys fees, we create a narrow exception to that rule for the statutory appeal procedure here involved. The appeal statutes authorize the clerk to engage in litigation in his official capacity for the benefit of the county and district court systems. Such litigation here did not involve the clerk's personal salary, but that of deputy clerks

and hence the budget of the clerk's office. The budget of such office undoubtedly has an impact on the quality and quantity of the output of that office and ultimately on the judicial system.

Ordinarily, the clerk should be represented in litigation by the county attorney or the attorney general's office where he is litigating in his official capacity. However, because the clerk's appeal attacks a decision of the county board, conflict of interest makes such representation undesirable and impractical. This problem is illustrated well in the instant case, in which the county attorney declined to represent the county board because of conflict and the board's case was presented by the attorney general. Since representation of the clerk by private counsel best serves the public interest in this dispute, and since it would be unfair to saddle the clerk with attorneys fees for representing his office, we hold that the clerk is entitled to reasonable attorneys fees in the district court and in this court. Any dispute regarding reasonableness of fees may be settled by further proceedings in the district court.

We would note, however, that two possible problems involving statutory appeals are not before us: (1) The clerk here is not prosecuting the appeal for his own salary; and (2) the clerk here has prevailed below and is therefore not prosecuting a frivolous appeal. We offer no opinion on the impact of contrary facts on the propriety of awarding attorneys fees.

Affirmed.